IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____
GERALDNAY BARNETT             )
                              )
   Plaintiff (*pro se*),      )
                              )
        v.                    )     Civil Action No. WGC-10-869
                              )
MICHAEL ASTRUE, Commissioner  )
Social Security Administration)
                              )
   Defendant.                 )
_____)

## MEMORANDUM OPINION

Plaintiff Geraldnay Barnett ("Ms. Barnett" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for Disability Insurance Benefits ("DIB"), Widow's Insurance Benefits ("WIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* Document Nos. 6-8.[1] Pending and ready for resolution is Defendant's Motion for Summary Judgment (Document No. 16)[2]. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons set forth below, Defendant's Motion for Summary Judgment will be granted.

---

[1] The case was subsequently reassigned to the undersigned.

[2] On November 2, 2010 a scheduling order was entered. *See* Document No. 11. Plaintiff's motion for summary judgment was due January 8, 2011. Plaintiff did not file a motion. Plaintiff's reply memorandum was due March 29, 2011. Plaintiff did not file a reply.

On March 8, 2011 the Clerk's Office sent a Rule 12/56 notice to Plaintiff. That notice states in pertinent part,

1

1. **Background**.

On March 28, 2007 Ms. Barnett protectively filed a Title II application for WIB[3] and a Title XVI application for SSI alleging a disability onset date of September 1, 2006 due to depression. *See* R. at 9, 99-103, 131. Ms. Barnett's applications were denied initially on July 12, 2007. R. at 9. On October 24, 2007 Ms. Barnett requested reconsideration. R. at 38. That same day, Ms. Barnett filed a Title II application for DIB,[4] R. at 104-08. The DIB claim was escalated to the reconsideration level with the claims for WIB and SSI. R. at 9. On December 20, 2007 all three claims were denied on reconsideration. *See* R. at 40-45. On January 17, 2008 the Social Security Administration received Ms. Barnett's request for a hearing before an Administrative Law Judge ("ALJ"). R. at 49. On April 22, 2009 the ALJ convened a hearing by video. R. at 19-32. Ms. Barnett was represented by counsel at this hearing. The ALJ obtained

---

> The Defendant(s), Social Security Commissioner, has filed a motion to dismiss or for summary judgment. If this motion is granted, it could result in the dismissal of your case or the entry of judgment against you.
> **You have the right to file a response to this motion within seventeen (17) days from the date of this letter.**

Document No. 17 at 1.

The March 8, 2011 letter was mailed to a Baltimore, Maryland address. Plaintiff did not file anything in response.

On April 12, 2011 the Clerk's Office mailed another Rule 12/56 notice to Plaintiff at a Columbia, Maryland address. Seventeen days from the date of the April 12, 2011 letter is **April 29, 2011**. That deadline has elapsed without a response from Plaintiff.

[3] "[W]hether the claimant is the widow of the deceased worker, has attained the age of 50, is unmarried (unless one of the exceptions in 20 CFR 404.335(e) apply), and has a disability that began before the end of the prescribed period. The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later.

In this case, the claimant's prescribed period began on September 7, 2006, the date the wage earner died. Therefore, the claimant must establish that her disability began on or before September 30, 2013, in order to be entitled to a disabled widow's benefits." R. at 10. *See also* R. at 127.

[4] Ms. Barnett "has acquired sufficient quarters of coverage to remain insured through December 31, 2010." R. at 9. *See also* R. at 109, 121, 145.

2

testimony from Ms. Barnett and a vocational expert ("VE"). In the June 9, 2009 decision the ALJ found Ms. Barnett is not disabled within the meaning of the Act. R. at 17-18. Ms. Barnett requested a review of the hearing decision. R. at 5. On February 18, 2010 the Appeals Council denied Ms. Barnett's request for review, R. at 1-3, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ'S Decision**.

The ALJ evaluated Ms. Barnett's claims for DIB, WIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. Ms. Barnett bears the burden of demonstrating her disability as to the first four steps. At step five the burden shifts to the Commissioner. If Ms. Barnett's claims fail at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At step one the ALJ found Ms. Barnett has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date of disability. R. at 12. The ALJ concluded at step two that Ms. Barnett's depression is a severe impairment. *Id.*

At the hearing Ms. Barnett's counsel brought to the ALJ's attention that Ms. Barnett "has been diagnosed with chronic back pain, as well as she's had trouble with pain in her knees . . . Your Honor." R. at 22. The ALJ considered these medical conditions at step two and made the following findings.

> As to non-severe impairments, records from Jai Medical Center revealed that the claimant was also seen for complaints of back pain and knee pain (Exhibits 1F, 5F, and 9F). On January 6, 2006, the claimant had full range of motion. A note dated January 4, 2008, revealed that the claimant's low back pain and osteoarthritis of the knee were reported as stable (Exhibit 9F/14). The claimant has not required any surgery for her alleged back or

3

> knee problems. Accordingly, the undersigned finds that the claimant has no severe back or knee impairment.

R. at 12.

At step three the ALJ determined Ms. Barnett does not have an impairment or combination of impairments that meets or medically equals the criteria of any of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Listing 12.04 (Affective Disorders[5]). To meet this listing Ms. Barnett must satisfy the criteria of Paragraphs A and B or the criteria of Paragraph C. The ALJ found Ms. Barnett did not satisfy the Paragraph B criteria because she has *mild* restriction of activities of daily living, *moderate* difficulties in social functioning, *moderate* difficulties with regard to concentration, persistence or pace, and *one or two episodes* of decompensation, each of extended duration. R. at 13. Paragraph B requires however two of the following: *marked restriction* of activities of daily living, *marked difficulties* in maintaining social functioning, *marked difficulties* in maintaining concentration, persistence or pace, and *repeated episodes* of decompensation, each of extended duration. "Because the claimant's mental impairment does not cause at least two "marked" limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." *Id*.

With regard to the Paragraph C criteria the ALJ found Ms. Barnett failed to meet the requirements. "[S]he has not had repeated episodes of decompensation, each of an extended duration; [s]he has not had a residual disease process that has resulted in such marginal

---

[5] "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2009).

4

adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or [s]he has not had a current history of 1 or more years' inability to function outside a highly supportive living arrangement with a continued need for such arrangement." *Id*.

Next the ALJ determined Ms. Barnett's residual functional capacity ("RFC"). The ALJ found Ms. Barnett has no exertional limitations but found her non-exertional limitations restricted what Ms. Barnett could do.

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple routine, competitive, low stress, repetitive tasks on a sustained basis over a normal eight-hour workday in a stable work environment with no more than simple decision making, occasional close interpersonal interactions with co-workers, and occasional interaction with the public. She would be unable to perform complex and detailed tasks or to meet fast paced, high production demands.

R. at 14.

At step four the ALJ found, due to Ms. Barnett's severe impairment, she is incapable of performing her past relevant work. At step five the ALJ considered Ms. Barnett's age (49 years old on the alleged disability onset date), her education (limited; 10th grade; able to communicate in English), past work experience (transferability of job skills is not relevant) and her RFC (simple, routine, competitive, low stress, not complex, not detailed and not fast paced, high production demand at all exertional levels). The ALJ found the Social Security Administration met its burden of proving that Ms. Barnett is capable of performing various

5

other jobs[6] that exist in significant numbers in the national economy, relying on the testimony of the VE. R. at 17, 30. Accordingly, the ALJ concluded that Ms. Barnett is not disabled within the meaning of the Act. R. at 17-18.

3. **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

4. **Discussion**.

Although Ms. Barnett has not filed a motion for summary judgment nor a reply in response to Defendant's motion for summary judgment, this Court is nonetheless required to review the ALJ's conclusions and determine whether they are legally correct. *See Meyers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980).

    A.    *Step 2 Analysis*

---

[6] A mail clerk, janitorial work at the light exertional level and janitorial work at the medium level.

At step two the ALJ found Ms. Barnett's back pain and knee pain are *non-severe* impairments. The Court has reviewed the medical records. As early as September 6, 2005 and as recent as March 10, 2009, back pain and/or knee pain are diagnosed or assessed. Despite Ms. Barnett's back pain, she was found to have muscle strength in both her upper extremities and lower extremities of 5/5. *See* R. at 175, 209. During an October 4, 2007 office visit Ms. Barnett reported *decreased* low back pain. R. at 209. On January 4, 2008 a doctor found Ms. Barnett's lower back pain and knee pain stable. R. at 248. Additionally, with regard to Ms. Barnett's knee pain, during a March 4, 2008 office visit, the doctor noted negative x-rays and negative clicking. He found Ms. Barnett's knee stable. R. at 247. Ms. Barnett, who bears the burden at step two, did not present any other evidence demonstrating that her back pain and knee pain were severe. Substantial evidence supports the ALJ's determination.

   *B.    Weight Assigned to Treating Physician versus Non-Treating Physicians*

The ALJ assigned *great weight* to the opinions of two State Agency psychologists but assigned *little weight* to the opinion of Dr. Orlando Davis, Ms. Barnett's treating physician. The ALJ explained the reasons for assigning great weight or little weight as follows:

> As for the opinion evidence, on July 11, 2007, M. Oidick, Ph.D., a reviewing psychologist at the state agency, completed a Psychiatric Review Technique form and opined that the claimant had major depression resulting in mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation. Dr. Oidick opined that the claimant showed the functional capacity mentally to complete tasks involving multiple steps (Exhibit 3F). Dr. Oidick also completed a Mental Residual Functional Capacity Assessment form and opined that the claimant had minimal social restrictions and moderate impairment in continuity of performance. The claimant retained the capacity to perform simple work-related tasks on an ongoing basis (Exhibit 4F). Great weight is given to

7

the opinion of Dr. Oidick that the claimant has a severe impairment of depression as it is well supported by the evidence of record. However, the evidence now of record supports greater limitations with regard to the "B" criteria.

On November 12, 2007, Orlando Davis, M.D., completed an assessment form and opined that the claimant has poor to no ability to follow work rules; relate to co-workers; deal with the public; interact with supervisors; deal with work stressors; function independently; maintain attention/concentration; use judgment; understand, remember, and carry out complex or detailed job instructions; behave in an emotionally stable manner; and relate predictably in social situations. Dr. Davis opined that the claimant's depression altered her mood making her emotionally unstable and unpredictable (Exhibit 6F). Little weight is given to the limitations found by Dr. Davis as they are not supported by the medical evidence of record.

On December 14, 2007, M. Walklett, Psy.D., a reviewing psychologist at the state agency, completed a Psychiatric Review Technique form and opined that the claimant had a severe mental impairment of major depression with symptoms of anxiety. With regard to the "B" criteria, Dr. Walklett opined that the claimant had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation (Exhibit 8F). Dr. Walklett also completed a Mental Residual Functional Capacity form and opined that the claimant had no mental impairment that met or equaled a Listing. Dr. Walklett further opined that the claimant had mild limitations in the areas of dealing with activities of daily living, moderate limitations in the ability to interact and relate with others socially, and moderate limitations in areas dealing with attention, concentration, persistence, and pace (Exhibit 7F). Great weight is given to the opinion of Dr. Walklett as it is consistent with the evidence of record.

R. at 15-16.

With regard to Dr. Davis' opinion, the Court has reviewed the *Medical Assessment of Ability to Do Work-Related Activities (Mental)* form completed by Dr. Davis, *see* R. at 214-16, and compared that assessment with treatment notes of office visits by Ms. Barnett at Jai

8

Medical Center, *see* R. at 173-77, 208-09, 244-48. The treatment notes do not support the severe limitations as opined by Dr. Davis. The Court notes the January 4, 2008 treatment note states Ms. Barnett's depression is "Stable. Follow." R. at 248. In her subsequent visits with Jai Medical Center on March 4, 2008, July 25, 2008 and September 26, 2008, depression is not listed as a diagnosis or assessment. R. at 246-47. Notably, on June 26, 2008, depression is indicated as a medical condition that is part of Ms. Barnett's *past history* but is not listed under current or present diagnosis. R. at 245. The ALJ followed SSR 96-2p[7] in evaluating Dr. Davis' opinion. Substantial evidence supports the weight the ALJ assigned to Dr. Davis' opinion.

With regard to the opinions of Dr. Oidick and Dr. Walklett, their opinions are supported by the evidence of record. At the time Dr. Oidick conducted a records review and made his assessment on July 11, 2007, the only medical records available to him where a few treatment notes plus some laboratory results from Jai Medical Center, *see* R. at 172-80, and the consultative psychiatric report by Dr. Nicola Cascella of June 29, 2007, *see* R. at 181-88. By the time Dr. Walklett conducted a records review and made her assessment at the reconsideration level on December 14, 2007, some additional medical records had been submitted, specifically treatment notes and laboratory results from Jai Medical Center, *see* R. at 207-12, and Dr. Orlando Davis' opinion, *see* R. at 214-16. Based on this additional information, Dr. Walklett opined Ms. Barnett had greater limitations with regard to the Paragraph B criteria (versus Dr. Oidick's opinion). The ALJ acknowledged this fact and incorporated the greater limitations in

---

[7] *Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, 1996 WL 374188 (Jul. 2, 1996).

9

Ms. Barnett's RFC. The ALJ followed 96-6p[8] in evaluating the opinions of Dr. Oidick and Dr. Walklett. Substantial evidence supports the weight the ALJ accorded to the opinions of Dr. Oidick and Dr. Walklett.

C.      *Listing 12.06*

At step three the ALJ determined Ms. Barnett's depression does not meet or medically equal Listing 12.04, *Affective Disorders*. In reviewing the record the Court notes that Dr. Oidick and Dr. Walklett considered <u>both</u> Listing 12.04 and Listing 12.06 in assessing the limitations caused by Ms. Barnett's depression.

Listing 12.06 concerns *Anxiety Related Disorders*. This Listing is described as follows:

> In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> A. Medically documented findings of at least one of the following:
>
>     1.      Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>
> > a. Motor tension;
> > b. Autonomic hyperactivity; or
> > c. Apprehensive expectation; or
> > d. Vigilance and scanning;
>
> or

---

[8] *Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence*, 1996 WL 374180 (Jul. 2, 1996).

  2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

  3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

  4. Recurrent obsessions or compulsions which are a source of marked distress; or

  5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

  1. Marked restriction of activities of daily living; or

  2. Marked difficulties in maintaining social functioning; or

  3. Marked difficulties in maintaining concentration, persistence, or pace; or

  4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 (2009).

In reviewing the record the Court finds one reference to an anxiety related disorder. During the consultative psychiatric examination Ms. Barnett reported to Dr. Cascella about "symptoms of anxiety at times." R. at 182. Dr. Cascella diagnosed "Major Depression, recurrent with symptoms of anxiety." *Id.* None of the records from Jai Medical Center refer to

11

an anxiety related disorder. Dr. Davis, in completing the *Medical Assessment of Ability to Do Work-Related Activities (Mental)* form does not refer to an anxiety related disorder. *See* R. at 214-16. Furthermore the Apex Counseling Center's Psychiatric Initial Evaluation, conducted on April 4, 2009, diagnosed "Major Depressive [Disorder] 296.34, Recurrent, Moderate, with Psychotic Features.[9]"

There is a lack of evidence in the record satisfying the conditions listed in Paragraph A of Listing 12.06, characteristics distinctive of *Anxiety Related Disorders*. In the alternative, based on Dr. Cascella's diagnosis and Ms. Barnett's statements about her feelings since the death of her husband, factor 5 of Paragraph A appears to be satisfied. Nonetheless, as documented by the ALJ's evaluation of Listing 12.04, Ms. Barnett does not meet the criteria for Paragraph B of Listing 12.06. The record clearly establishes that Ms. Barnett does not meet Paragraph C of Listing 12.06. Based on the records review the Court finds the ALJ did not err by failing to discuss Listing 12.06. Substantial evidence supports the ALJ's determination at step three.

D. *Credibility*

In considering Ms. Barnett's symptoms, the ALJ found Ms. Barnett's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the [RFC] assessment." R. at 14. The ALJ identified several instances for finding Ms. Barnett's statements as non-credible.

---

[9] According to the *Diagnostic and Statistical Manual of Mental Disorders*, "[i]n Major Depressive Disorder, these specifiers indicate either the severity of the current Major Depressive Episode or the level of remission if full criteria are no longer met. In Bipolar I and II Disorder, these specifiers indicate either the severity of the current Major Depressive Episode or the level of remission if the most recent episode was a Major Depressive Episode. If criteria are currently met for the Major Depressive Episode, it can be classified as Mild, Moderate, Severe Without Psychotic Features, or Severe With Psychotic Features." *Diagnostic and Statistical Manual of Mental Disorders IV-Text Revision* ("DSM-IV-TR") 411-12 (2000). DSM-IV-TR does not mention a Major Depressive Episode, <u>Moderate, With Psychotic Features</u> as Apex Counseling Center diagnosed.

> When examined by Dr. Cascella on June 29, 2007, the claimant reported that she began experiencing symptoms of depression while taking care of her husband. For the first time in her life, she felt overwhelmed and sad with crying spells, irritability, interrupted sleep, poor appetite and energy, social withdrawal, loss of interest and motivation, anhedonia, suicidal ideation and passive death wishes, feelings of worthlessness and hopelessness, and guilt about her husband's death. However, on mental status examination the claimant was fully oriented. Her speech was normal. She had no formal thought disorder. She had no psychomotor agitation or retardation. No delusions were elicited. Her insight and judgment were fair (Exhibit 2F).
>
> During psychiatric evaluation on April 4, 2009, the claimant reported problems with anger, irritability, rage, impulsivity, and anxiety/worry. However, she had been out of medications for several weeks. Further, on examination the claimant's mental status was normal. She reported that she did well on Trazodone and Effexor (Exhibit 10F).
>
> The claimant greatly minimized her activities of daily living. However, the evidence of record does not provide a basis for such severe limitations.
>
> \*       \*       \*
>
> The undersigned notes that the claimant reported to Dr. Cascella (Exhibit 2F) that she quit working to take care of her sick husband and did not report that it was due to any disability which reflects poorly on her credibility.
>
> The undersigned also notes that the claimant testified that she no longer visits with her sister but then stated that it is because she moved and did not state that it was due to her alleged disability.

R. at 15.

In the June 29, 2007 Psychiatric Report Dr. Cascella reported under *Personal History*, [Ms. Barnett] has worked as a nurse's assistant, cashier, and as a day care provider. She last worked in that capacity in 2005. She quit her job because she had to take care of a sick

husband who died nine months ago." R. at 181.  However, at the hearing, Ms. Barnett provided a different explanation for why she stopped working.

> Q: Now were there other social activities that you used to do that you no longer do now?
>
> A: I used to do daycare. I don't do that anymore.
>
> Q: And why is that?
>
> A: Because of the depression, you know, dealing with that.

R. at 27.

On the *Function Report – Adult* Ms. Barnett acknowledged she has no problems with personal care. R. at 138, 155. She is able to perform house work such as cleaning, doing laundry, ironing and some cooking. R. at 139, 156. Ms. Barnett is able to shop for herself. R. at 140, 157. Further she admits she is able to handle money by paying bills, counting change, handling savings account and using a checkbook or money orders. *Id.* On both *Function Report – Adult* Ms. Barnett completed at the initial level and the reconsideration level, Ms. Barnett indicated she does not socialize, she does not spend time with others and does not go anywhere. R. at 141-42, 158-59. At the April 22, 2009 hearing Ms. Barnett elaborated on this topic.

> Q: Are there things or activities that you used to do that you no longer do now?
>
> A: Yes.
>
> Q: And what's – –
>
> A: I usually, I would go and associate with my friends or either my sister, but by my sister moving to Pennsylvania, I very seldom, you know, associate with her or talk to her and my friends, they just, you know, don't come around no more.

> Q: Do you ever go visit anyone?
>
> A: No. I used to go and visit my sister before she moved, but since she moved I don't.
>
> Q: And what about your friends, do you ever go visit them?
>
> A: No.
>
> Q: And why is that?
>
> A: Because I figure that if they don't, you know, come and see me, they don't want to bother, they don't call or nothing like that, I'm thinking they don't want to be bothered with me.

R. at 27.

Based on a review of the record the Court finds no error with the ALJ's determination regarding Ms. Barnett's credibility.

5. **Conclusion.**

Substantial evidence supports the decision that Ms. Barnett is not disabled. Accordingly, Defendant's Motion for Summary Judgment will be granted.


Date: May 6, 2011                           _____/s/_____
                                            WILLIAM CONNELLY
                                            UNITED STATES MAGISTRATE JUDGE